## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JUSTIN T. ANDERSON,                          *

Plaintiff                                    *

v                                            *                 Civil Action No. ELH-20-480

CO II DAVID HENDERSON,                       *

Defendant                                    *
                                          ***

## MEMORANDUM OPINION

In this lawsuit, filed pursuant to 42 U.S.C. § 1983, self-represented plaintiff Justin T. Anderson alleges that defendant, Correctional Officer II David Henderson,[1] failed to protect him from harm and subjected him to excessive force.  ECF 1; ECF 4; ECF 10; ECF 10-1.  Henderson has moved to dismiss or, in the alternative, for summary judgment (ECF 18), supported by a memorandum (ECF 18-1) (collectively, the "Motion") as well as exhibits and declarations.

Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court notified plaintiff of his right to respond and the potential consequences of his failure to do so.  ECF 19.  Plaintiff filed nothing further.

The matter is ripe for disposition. Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018).  Defendant's Motion, construed under Rule 12(b)(6), will be granted.  The Complaint shall be dismissed, without prejudice.

---

[1] The Clerk shall amend the docket to reflect defendant's full name and title.

## I. Background

Plaintiff is presently incarcerated at North Branch Correctional Institution ("NBCI").  On February 24, 2020, he filed suit (ECF 1), premised on incidents alleged to have occurred during his incarceration at Roxbury Correctional Institution ("RCI").  The Court directed plaintiff to amend his Complaint.  ECF 3.  Thereafter, plaintiff filed another Complaint.  ECF 4 ("First Amended Complaint").  The Court again directed plaintiff to amend and clarify his Complaint.  ECF 9.  Plaintiff filed another complaint, as directed.  ECF 10 ("Second Amended Complaint").

Plaintiff alleges that as soon as he arrived at RCI, he was "put under attack" by officers who moved him to different cells for no reason, and if he refused a cell he was placed on "lock-up." ECF 1 at 3.[2]  Plaintiff acknowledges that he engaged in verbal altercations with his cellmates each time he was moved.  *Id*; ECF 4 at 4. After being moved to his fourth cell, plaintiff punched a "white-guy" in the face in the dining hall ECF 1 at 3.  He claims:  "[I was] fighting back against what they were doing which was try[ing] to set me up which I was told this periodically by the inmates." *Id*.  Plaintiff fractured his knuckles during the fight and needed stitches in his hand.  *Id*.

When plaintiff was moved to his fifth cell, he told officers that he should be in the medical unit instead of "lock-up."  *Id*. at 3-4.  According to plaintiff, his cellmate, Nathaniel Gaskins, had a nine-inch butcher knife, threatened to kill him, and said officers had paid him and threatened him with losing his prison job unless Gaskins carried out a "hit" on plaintiff.  ECF 1 at 4; ECF 4 at 4, 5.  Plaintiff states that he had to take matters into his own hands so he hit and punched Gaskins. ECF 4 at 4.

---

[2] The page numbers cited refer to the pagination assigned by the court's electronic docketing system and may not correspond to the page numbers that appear on the parties' submissions.

Aside from naming Officer Henderson as the sole defendant in the original Complaint, plaintiff made no mention of defendant's participation or a stated legal basis for liability. Therefore, plaintiff was provided an opportunity to amend the Complaint to provide this information.  ECF 3.

In his First Amended Complaint (ECF 4), filed on June 8, 2020, plaintiff particularized his claims, stating that during an escort to and from the showers, plaintiff told Henderson that he feared for his life because Gaskins had a nine-inch knife and was threatening to kill him. ECF 4 at 5-7. Defendant escorted plaintiff back to his cell. Plaintiff states that he pleaded with officers not to return Gaskins to the cell with him. *Id*. at 6.  Nevertheless, defendant and other officers returned Gaskins to the cell, removed his handcuffs, and forced him into the cell with plaintiff.  Plaintiff and Gaskins fought until the officers administered pepper spray. The officers then threw plaintiff to the ground and escorted him to the medical unit. where he pleaded to remove the pepper spray and waited a long time until he was able to wash his face and body.  ECF 4 at 6.  He claims the pepper spray damaged the eyesight in his left eye, and he was later denied eye drops from medical providers. ECF 4 at 6.

According to plaintiff, the officers failed to protect him from harm, in violation of his rights under the Eighth Amendment to the Constitution.  ECF 4 at 6; ECF 10-1.  He alleges the officers wrote a bogus report charging him with assaulting an officer, which resulted in his placement in disciplinary segregation, loss of visiting privileges, and an increase in his security level. ECF 4 at 7.  Further, he alleges that inmates continue to engage him in fights.[3]  Anderson seeks damages for "what the state did to me" including the damage to his eyesight.  ECF 4 at 3.

---

[3]  To the extent plaintiff raises medical claims that he is not being treated properly for his eye condition (ECF 4 at 9), and a hernia condition unrelated to the use of force incident (*id*. at 8), or is improperly housed in segregation (*id*. at 9), he alleges no involvement by defendant.  Plaintiff

Plaintiff acknowledges that he did not file an administrative remedy procedure ("ARP") related to the claims in this lawsuit. ECF 1 at 2; ECF 4 at 2. Plaintiff was transferred from RCI to Western Correctional Institution on March 13, 2017. ECF 18-2 at 2. He was subsequently placed in a cell by himself at NBCI. *Id*. at 8.

## II.     Standard of Review

Defendant may test the legal sufficiency of the Complaint by way of a motion to dismiss under Rule 12(b)(6). *Fessler v. Int'l Bus. Machs. Corp*., 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham,* 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc*., 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc*., 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 513 (2002). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the

---

may pursue his claims against the appropriate defendants in a separate complaint. The Clerk shall send a complaint form and information packet to plaintiff to assist him.

defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Plaintiffe*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), cert. denied, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein,* 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys*., *LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc*., 494 F.3d 458, 464 (4th Cir. 2007) (*en banc*); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.'" *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co*., 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

Cir. 2013), abrogated on other grounds by *Reed. v. Town of Gilbert,* 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.,* 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing*, LLC, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance* Agency, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004), cert. denied, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc*., 190 F.3d 609, 618 (4th Cir. 1999).

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro,* 855 F.3d 639, 642 (4th Cir. 2017), cert. denied, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty*., 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

7

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III.    Discussion

Plaintiff's claims are premised on the Eighth Amendment. The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment also protects inmates from physical harm committed by fellow inmates "resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick,* 600 F.2d 458, 460 (4th Cir. 1979)).

Defendant seeks dismissal of the claims against him or summary judgment in his favor on several grounds: (1) plaintiff failed to exhaust his administrative remedies; (2) Anderson is not entitled to recover compensatory damages without proof of actual injury; (3) plaintiff has failed to

state a claim for failure to protect from harm at the hands of another inmate; (4) Anderson has failed to state an excessive force claim against defendant; (5) Eleventh Amendment immunity; and (6) qualified immunity.  ECF 18-1.[4]

Plaintiff's excessive force and failure to protect claims raise issues concerning plaintiff's conditions of his confinement.  Therefore, the claims must be administratively exhausted before they may be considered by this court.  Although defendant asserts several grounds in support of his Motion, I address only exhaustion, because it is dispositive.

If a prisoner's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  It provides, in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516,

---

[4] Defendants do not address plaintiff's claims of inadequate medical care.  However, plaintiff presents no specific allegations against defendant in this regard, nor does he assert that defendant was personally involved in decisions about plaintiff's medical care. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (personal participation required for liability). Moreover, he does not assert that defendant acted to hinder or impede his medical care.  Thus, no claim for denial of medical care is stated against defendant.

532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

An inmate is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* at 1856; *see Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc*., 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock,* 549 U.S. at 219; *see Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (stating that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of*

*Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id*. (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aguilar-*

*Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross,* 136 S.Ct. at 1855, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. Notably, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable, so that an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Plaintiff has not initiated or exhausted his administrative remedies in regard to his claims. ECF 1 at 7; ECF 4 at 3. Plaintiff states in the Complaint: "I did not know anything about how to

file for that." ECF 1 at 2.  In the First Amended Complaint, he adds:  "I did not know of any such thing to do as to file a grievance."  ECF 4 at 2.  However, he does not assert that administrative remedies were "unavailable" to him for any of the reasons specified by the *Ross* Court.

Defendant has submitted declarations from the RCI Administrative Remedy Coordinator (Decl. of James Sprecher, ECF 18-5) and the Executive Assistant to the Deputy Commissioner of Correction (Decl. of Ebone' Janifer, ECF 18-6), stating that there is no record of plaintiff having presented his claims, either through the Administrative Remedy Procedure process or the Inmate Grievance Process.  And, as noted, the court may consider those declarations without converting defendant's motion into a motion for summary judgment, as they are integral to the Complaint and their authenticity is undisputed.  *See Witthohn v. Fed. Ins. Co*., 164 F. App'x 395, 396 (4th Cir. 2006) (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed") (citations omitted).  Further, plaintiff does not dispute that his claims are unexhausted.

I conclude that the Court may not consider the claims presented here, because they are administratively unexhausted.

### IV.    Conclusion

Plaintiff has failed to exhaust his administrative remedies. Therefore, I will grant the Motion and dismiss the suit, without prejudice.

A separate Order follows.


May 27, 2021                                    _____/s/_____
Date                                            Ellen L. Hollander
                                                United States District Judge